UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DOROTHY L. WEST,

    Plaintiff,

    v.

MEDSTAR SOUTHERN MARYLAND
HOSPITAL CENTER ADMIN and
DAVID LAZZARI,

    Defendants.

Civil Action No. TDC-24-0554

**MEMORANDUM OPINION**

Self-represented Plaintiff Dorothy West has filed suit against Defendants Medstar Southern Maryland Hospital Center ("Medstar") and David Lazzari, Medstar's Director of Human Resources, alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't § 20–606 (West 2021), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). Defendants have filed a Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

**I.   Discrimination and Harassment**

Plaintiff Dorothy West was employed as an unarmed security officer at Medstar Southern Maryland Hospital in Clinton, Maryland for over 17 years, from February 14, 2005 to October 13,

2022. West alleges that, during her time at MedStar, she experienced and observed race discrimination and harassment by her supervisor, Security Officer Wayne Simms, directed at West and two other Black "senior lead female officer[s]." First Am. Compl. Supp. at 12, ECF No. 13-1.

West alleges that Simms harassed and targeted her personally, and that his treatment of her was different from his treatment of her colleagues. For example, on certain occasions Simms hung up the phone on her; yelled at her close to her face and "howl[ed]" at her, Second Am. Compl. Supp. at 5–6, ECF No. 40-2; monitored her at lunch; denied her requests for bereavement leave, medical leave, and schedule adjustments; directed her to perform dangerous assignments that threatened her safety, such as giving a jump start to a car in the parking lot during a lightning storm; and often refused to dispatch backup for West when she called for it. West also observed Simms verbally abuse other Black staff, who considered him to be racist. West heard from other staff and patients about Simms's racist behavior at a previous job and about racist comments Simms had made while employed at Medstar.

West also saw Simms engage in what she believed to be discriminatory conduct that threatened the health and safety of Black patients at Medstar. For example, West witnessed Simms physically grab a young Black patient and "slam[]" him on his bed. *Id.* at 21. On that occasion, West watched as "Simms turned red face as he applied his body weight to the young man's left shoulder and attempted to wrap the patient['s] left arm around the bed rail as though to tie a knot." *Id.* Simms proceeded to verbally threaten the patient by telling the patient to "meet me outside at eleven o'clock" and warning him that he had a son who was "bigger and stronger" than the patient. *Id.* After the incident, a nurse asked for Simms's name "because she said he is racist and will be

2

reported for his behavior." *Id.* On another occasion, while in a Black patient's room, West observed Simms dangerously apply pressure to a patient's jawbone.

## II. Retaliation

According to West, dating back to 2014, she reported her concerns about Simms to the MedStar Human Resources Department ("HR") on numerous occasions, but her complaints were generally ignored. For example, on June 19, 2020, she mailed a letter to Medstar to report Simms's continued abusive behavior, including yelling at her close to her face. On another occasion, on September 19, 2020, West sent a letter to HR reporting the incident of "excessive force" in which Simms slammed the young Black patient onto a bed. *Id.* at 37–39.

On January 16, 2021, Defendant David Lazzari, MedStar's Director of Human Resources, responded to West with a letter stating that, after conducting an investigation, Medstar was "unable to substantiate the concerns" she had expressed about "discriminatory behaviors" by Simms and about "over aggressive behaviors" by Simms "when interacting with patients." *Id.* at 40. West alleges, however, that MedStar's investigation did not follow the company policy for employee grievances.

As Simms's harassing and discriminatory behavior continued, West made additional complaints on July 20, 2022 and August 25, 2022. On September 5, 2022, West learned that Simms had "struck" a Black woman in the employees' parking lot with a security vehicle, "knocking her shoes off" and requiring her to seek treatment in the emergency room. Second Am. Compl. at 4, ECF No. 40; Second Am. Compl. Supp. at 2–3. West alleges that security camera footage shows that the woman was standing on the curb when Simms "turn[ed] the vehicle bumper" toward her as he drove past. Second Am. Compl. at 4. After Simms reported that the woman had stepped out in front of his car and had a meeting about the incident with MedStar

3

management, West overheard him tell another security officer that he had been told, "Don't worry about it." *Id.*

Perceiving this incident as a sign that Simms had "stepped up his disrespect and harassment toward black female employee[s]," *Id.* at 4, West submitted a four-page written complaint on September 14, 2022 in which she reported the parking lot incident and re-asserted other complaints about Simms. Among other points, she questioned the failure to administer a breathalyzer test to Simms and asserted that if a Black officer had struck someone with a vehicle, such a test would have been required.

On September 23, 2022, West had a meeting with Lazzari and Medstar Vice President of Human Resources Mary Jo Schweickhardt during which Schweickhardt "made it very clear" to West that she was being terminated as an unarmed security officer because of her September 14, 2022 written complaint. *Id.* at 2. Lazzari and Schweickhardt provided West with a "termination package" which included a discharge agreement that she refused to sign. *Id.* at 1–2. On October 13, 2022, she received a final letter from Schweickhardt which stated that HR had completed an investigation and was unable to substantiate the complaints West raised on July 20, 2022 and August 25, 2022. West's employment was officially terminated that same day.

### III. Procedural History

On August 25, 2023, West signed and dated a charge of discrimination which she filed with the United States Equal Employment Opportunity Commission ("EEOC"). On November 15, 2023, in response to West's charge of discrimination ("the EEOC Charge"), the EEOC issued a Notice of Right to Sue, which was mailed on November 28, 2023 and received by West on December 2, 2023. On February 23, 2024, West filed the original Complaint in this case in which she alleged violations of Title VII based on a discriminatory termination and retaliation. In a First

4

Amended Complaint, West added claims under 42 U.S.C. § 1981 and the MFEPA. The presently operative Second Amended Complaint did not alter the specific causes of action.

## DISCUSSION

In their Motion to Dismiss, Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) West's Title VII and MFEPA claims are untimely; (2) West's Second Amended Complaint does not meet the pleading requirements of Federal Rule of Civil Procedure 8(a); and (3) as to the claims against Lazzari, Title VII and MFEPA do not impose liability on individual defendants.

### I. Legal Standard

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Generally, in considering a Rule 12(b)(6) motion, courts may consider only the complaint and any attachments to it. *Sec'y of State for Defence v. Trimble Navigations Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts, however, may consider documents attached to a motion to dismiss

"when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (alterations omitted) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, because West referenced her EEOC filings in the Complaint and included as an attachment her EEOC Notice of Right to Sue, the EEOC Charge submitted by Defendants with their Motion is fairly deemed to be integral to the Complaint. Where there is no dispute as to its authenticity, the Court may consider it in resolving the Motion.

## II. Timeliness

In the Motion, Defendants argue that West's Title VII and MFEPA claims are time-barred because she failed to comply with two different timing requirements for such claims. Before filing suit under Title VII, a plaintiff must first file a charge of discrimination with the EEOC or a "State or local agency with authority to grant or seek relief" from the discriminatory practice. 42 U.S.C. § 2000e–5(e)(1). In a state such as Maryland, which has a state or local agency with such authority that has agreed to have the EEOC process charges of discrimination that would otherwise fall within its jurisdiction, the charge of discrimination must be submitted within 300 days of the act constituting the unlawful employment practice. *Id.*; *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n* (4th Cir. 2001); *EEOC v. Techalloy Md., Inc.*, 894 F.2d 676, 678 (4th Cir. 1990). Accordingly, a plaintiff cannot recover "for discrete acts of discrimination or retaliation" that occurred outside of the 300-day limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002); *see also Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 229 (D. Md. 2022) ("Plaintiffs bringing Title VII claims in Maryland are subject to a 300-day statute of limitations.").

Here, West's claims of discrimination and retaliation relate to her termination from MedStar and to alleged harassment that occurred prior to her termination. West alleges that she was terminated at a meeting on September 23, 2022, and based on attachments to her pleadings, she appears to have been officially terminated effective October 13, 2022. Thus, West was required to file her charge of discrimination no later than 300 days after that latter date, specifically, by August 9, 2023. West, however, did not file the EEOC Charge until August 23, 2023 at the earliest. Because West's Title VII claims are all based on conduct occurring more than 300 days before the date that she filed the EEOC Charge, those claims are time-barred. *See* 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp.*, 536 U.S. at 105. Where West has provided no persuasive reason to toll this deadline, the Motion to Dismiss will be granted as to the Title VII claims. Accordingly, the Court need not address Defendants' additional argument that the Title VII claims are time-barred because the original Complaint was not filed within 90 days of West's receipt of the Notice of Right to Sue.

As for the MFEPA claims, MFEPA allows an individual to bring a civil action for employment discrimination or retaliation if three criteria are satisfied: (1) "the complainant initially filed a timely administrative charge or a complaint under federal, State, or local law alleging an unlawful employment practice"; (2) "at least 180 days have elapsed since the filing of the administrative charge or complaint"; and (3) "the civil action is filed within 2 years after the alleged unlawful employment practice occurred." Md. Code Ann., State Gov't § 20–1013(a)(1)–(3); *McCray v. Md. Dep't of Transp.*, 662 F. App'x 221, 225 (4th Cir. 2016). Here, for the reasons stated above, West did not satisfy the first requirement in that her EEOC Charge was untimely as to the claims at issue in this case, all of which arose more than 300 days before the filing of the EEOC Charge. Accordingly, the Motion will also be granted as to the MFEPA claims. *See Bishop*

v. *Bd. of Educ. of Calvert Cnty.*, No. DKC 11-1100, 2011 WL 2651246, at *4–5 (D. Md. July 5, 2011); *Barnes v. ISG Sparrows Point, LLC*, BPG-10-2942, 2011 WL 4596058, at *2 (D. Md. Sept. 30, 2011).

### III.    Section 1981

Although West has alleged that the discrimination and retaliation she described also violated 42 U.S.C. § 1981, *see* First. Am. Compl. at 4, ECF No. 13, the Motion includes no specific argument for the dismissal of those claims. The timing requirements referenced in the Motion apply only to the Title VII and MFEPA claims. Likewise, the argument that Lazzari, as a supervisor or manager, is not a proper defendant, is limited to the Title VII and MFEPA claims.

The only argument that could apply to the § 1981 claims is Defendants' assertion that West has failed to comply with Federal Rule of Civil Procedure 8(a), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Although West's pleadings are not models of clarity or concision, courts are required to construe self-represented pleadings liberally. *See Erickson,* 551 U.S. at 94. Under this standard, where the Court can fairly glean from the filings articulable claims of discrimination and retaliation, the Court will not dismiss the § 1981 claims based on the alleged lack of clarity or brevity.

To the extent that the Motion could be construed as seeking dismissal of all claims for failure to state a claim, the Court will not do so at this stage because it can fairly discern a plausible § 1981 claim. Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). The statute defines the term "make and enforce

contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). To state a claim under § 1981, a plaintiff must establish "purposeful, racially discriminatory actions that affect at least one of the contractual aspects listed in § 1981(b)." *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015, 1018 (4th Cir. 1999). Section 1981 can provide basis for an employment discrimination claim based on race or a retaliation claim based on opposition to race discrimination. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 455, 457 (2008) (holding that § 1981 "encompasses claims of retaliation claims" for opposing race discrimination in employment); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2014) (en banc).

Here, West's pleadings most clearly assert a plausible claim of retaliation. For claims of employment discrimination or retaliation under § 1981, courts may apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), for use in claims under Title VII. *See Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Under this framework, courts first consider whether the plaintiff has established a *prima facie* case which, for a claim of retaliation, consists of: (1) protected activity by the plaintiff; (2) a materially adverse action against the plaintiff; and (3) a causal link between the protected activity and the adverse action. *Id.* at 217. Upon such a showing, a defendant may present evidence of a legitimate non-retaliatory reason for the action. *Id.* At that point, the plaintiff has the burden to show that the proffered reason was pretextual or to otherwise establish that unlawful retaliation was the true reason for the action. *Id.* For a § 1981 claim of retaliation, a plaintiff must plead and ultimately establish facts showing that but for the protected activity, the materially adverse action

would not have occurred. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

First, West has alleged protected activity, which includes opposing race discrimination through formal complaints or informal protests. *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981) (holding that protected activity can "encompass informal protests, such as voicing complaints to employers or using an employer's grievance procedures"). Here, in addition to submitting multiple prior complaints, West sent to MedStar a September 14, 2022 letter in which she alleged racially motivated misconduct by Simms.

Second, West has alleged a materially adverse action following the protected activity. For a retaliation claim, a materially adverse action is one which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). West alleges that Medstar terminated her employment at a meeting on September 23, 2022, which became effective on October 13, 2022. Such a termination plainly qualifies as a materially adverse action. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657–58 (4th Cir. 1998).

Third, West has adequately alleged causation. At the *prima facie* stage, this is "not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335–36 (4th Cir. 2018) (finding that an employee may establish causation by showing that the employer knew of the employee's protected activity and took a materially adverse action soon after). A causal connection can be deemed to be sufficient when the employer takes the materially adverse action "shortly after" learning of the protected activity. *Dowe*, 145 F.3d at 657. Here, the termination meeting on September 23, 2022 occurred only nine days after West submitted her September 14, 2022 written complaint to MedStar, which is more than sufficiently close in time to satisfy this element. *See,*

*e.g., Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) (discussing cases finding that the causal connection element was sufficiently alleged based on materially adverse actions occurring four to six months after the protected activity); *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) ("[T]hat his termination came so close upon his filing of the complaint gives rise to a sufficient inference of causation to satisfy the prima facie requirement.").

West has therefore alleged facts sufficient to state a § 1981 claim based on retaliation. Because there is at least one viable § 1981 claim, and where Defendants made no specific argument on why the allegations are insufficient as to any § 1981 claim based on race discrimination, the Court will not specifically analyze the sufficiency of the allegations as to that claim. Nevertheless, viewing the allegations in the light most favorable to West, the Court finds no basis to dismiss the § 1981 race discrimination claims. Accordingly, the Motion to Dismiss will be denied as to the § 1981 claims.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the Title VII and MFEPA claims and denied as to the § 1981 claims. A separate Order shall issue.

Date: October 24, 2024

THEODORE D. CHUANG
United States District Judge